# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **DOUGLAS LEKE** ) | |
|       **Petitioner,** ) | |
| ) | No. 1:20-cv-1382 |
| **v.** ) | |
| ) | |
| **RUSSELL HOTT, et al.** ) | |
|       **Respondents.** ) | |
| ) | |

### **MEMORANDUM OPINION**

Petitioner, an arriving alien from Cameroon seeking asylum in the United States, has been detained at the Farmville Detention Center by Immigration Customs Enforcement ("ICE") for the past 24 months, without a bond hearing, pending the outcome of Petitioner's asylum application. At issue now is Petitioner's habeas petition, seeking chiefly:

> (1) a declaration that Petitioner's prolonged detention of indefinite duration without a bond hearing violates the Fifth Amendment's Due Process Clause; and

> (2) an Order directing Respondents to schedule a prompt bond hearing before an Immigration Judge, at which time the Immigration Judge will determine,

>> (i) whether Petitioner must continue to be detained pending the outcome of Petitioner's asylum application or his removal, if necessary, or

>> (ii) whether Petitioner may be released on conditions that would reasonably assure Petitioner's appearance at subsequent immigration proceedings and the safety of the community.

Respondents oppose the requested relief and seek dismissal of Petitioner's habeas petition, arguing that Petitioner, as an arriving alien without valid entry documents, has no Fifth Amendment Due Process right to a bond hearing, despite his already-prolonged detention and despite his indefinite future detention. The matter has been fully briefed and the issues raised by the Petition have been adequately addressed by the parties' briefing. Accordingly, oral argument

1

is dispensed with and the matter is now ripe for disposition.

## I.

The following pertinent facts are derived from the record in this case.

- Petitioner, approximately 30 years old, is a native and citizen of Cameroon.

- Petitioner is appropriately classified as an "arriving alien," as Petitioner is a foreigner without valid entry documents who has applied for admission to the United States.[1]

- Respondents are (i) Russell Hott, ICE Field Office Director for the Washington D.C. area, (ii) Jeffrey Crawford, Superintendent of the Farmville Detention Center, and (iii) William Barr, the former Attorney General of the United States ("Respondents").

- On February 3, 2019, Petitioner arrived at the United States port of entry in San Ysidro, California, seeking initial admission to the United States. Petitioner was not permitted to enter the United States, as Petitioner did not possess valid entry documents.

- On February 7, 2019, at the San Ysidro port of entry, Petitioner spoke with an unidentified immigration officer regarding Petitioner's desire to enter the United States. During this interview, Petitioner expressed his intent to apply for asylum in the United States and his fear that he would be persecuted if he returned to Cameroon. Thus, pursuant to statute,[2] Petitioner was referred for an interview with an asylum officer, and was also sent to the Farmville Detention Center in Farmville, Virginia.

- On March 29, 2019, an asylum officer at the Farmville Detention Center interviewed Petitioner and determined that Petitioner has a credible fear of persecution in his native country of Cameroon.

- Petitioner's habeas petition provides an overview of Petitioner's asylum claim. Specifically, the Petition asserts that Petitioner is "[a] torture survivor in his native Cameroon" and was "arrested, beat[en], interrogated, and imprisoned" in Cameroon by unspecified Cameroonian government officials who falsely "believed that [Petitioner] was an Anglophone separatist." Pet. ¶¶ 8, 12 (Dkt. 1); Pet'r Decl. ¶¶ 2–4 (Dkt. 1-2). The Petition also asserts that unnamed Cameroonian government officials set fire to

---

[1] *See* 8 U.S.C. §§ 1225(a)(1) and (b)(1); *Othi v. Holder*, 734 F.3d 259, 262 n.1 (4th Cir. 2013); 8 C.F.R. § 1001.1(q) ("The term arriving alien means an applicant for admission . . . [to] the United States.").

[2] As relevant background, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* ordinarily places arriving aliens without valid entry documents in expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A). However, expedited removal does not occur where, as here, the arriving alien "indicates either an intention to apply for asylum" or "a fear of persecution." *Id.* In such a case, an asylum officer interviews the arriving alien to determine whether the arriving alien's fear of persecution in his home country is "credible." 8 U.S.C. § 1225(b)(1)(B). If the asylum officer determines that the arriving alien's fear of persecution is "credible," then the arriving alien enters standard removal proceedings where an Immigration Judge adjudicates the arriving alien's asylum claim. *See id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1965–66 (2020) (discussing review of asylum claims).

and destroyed Petitioner's home in Cameroon.  See Pet. ¶ 12.

- On May 8, 2019, Petitioner appeared before an Immigration Judge by videoconference to adjudicate his asylum claim.  This hearing was continued to allow Petitioner to retain legal counsel.

- On June 6, 2019, Petitioner appeared before an Immigration Judge by videoconference, this time represented by counsel.  At this hearing, Petitioner sought (i) asylum in the United States, (ii) withholding of removal from the United States, and (iii) protection under federal regulations implementing the Convention Against Torture.

- In July 2019, Petitioner provided testimony to the Immigration Judge in support of Petitioner's asylum claim.

- On August 22, 2019, the Immigration Judge denied Petitioner's asylum claim and entered a removal order.

- On September 19, 2019, Petitioner appealed the Immigration Judge's decision and removal order to the Board of Immigration Appeals ("BIA").

- On March 9, 2020, the BIA dismissed Petitioner's appeal.  Thereafter, on April 6, 2020, Petitioner filed a petition for review of the Board's dismissal with the U.S. Court of Appeals for the Fourth Circuit.  See Leke v. Wilkinson, No. 20-1393 (4th Cir. 2020).

- On May 28, 2020, Petitioner filed a motion with the Fourth Circuit to stay the Immigration Judge's removal order pending the Fourth Circuit's decision in Petitioner's case.

- On June 10, 2020, a Fourth Circuit panel denied Petitioner's motion to stay in a one-sentence Order without elaboration.

- On October 6, 2020, Petitioner filed a second motion to stay the Immigration Judge's removal order with the Fourth Circuit. This time, a different Fourth Circuit panel reviewed Petitioner's motion to stay, and on October 8, 2020, the motion was granted.[3] Thus, execution of Petitioner's August 22, 2019 removal order is currently stayed, and Petitioner remains detained at the Farmville Detention Center.[4]

- The Fourth Circuit has not yet issued a merits decision in Petitioner's case.  Oral argument in that matter is scheduled for March 11, 2021.

---

[3] The Fourth Circuit's October 8, 2020 Order was also a one-sentence Order and granted Petitioner's Second Motion to Stay without elaboration.

[4] It is undisputed that Farmville detainees, including Petitioner, have contracted COVID-19 in the past year.  See Mullan Decl. ¶¶ 20–37 (Dkt. 17-1).  However, nothing concerning COVID-19 is material to the resolution of Petitioner's claims or to the result reached here.

3

an arriving alien already detained for 24 months pending review of an asylum application has a Fifth Amendment Due Process right to a bond hearing or some other process given that his already-extended 24-month detention has no certain end in sight.

Analysis of Petitioner's Fifth Amendment Due Process claim properly begins with the recognition that the Fifth Amendment, by its terms, applies here. This conclusion follows from the terms of the Fifth Amendment that state that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Because an alien is a "person," *Wong v. United States*, 163 U.S. 228, 237–38 (1896) and because detention of a person without any sort of process is a deprivation of that person's bodily "liberty," an arriving alien subject to prolonged and indefinite detention is detained in violation of the Fifth Amendment.[6]

Although neither party has cited controlling Supreme Court or circuit authority, only a moment's reflection is needed to confirm that the Fifth Amendment applies to arriving aliens in this respect. Consider that, if the Fifth Amendment did not apply to protect against prolonged and indefinite detention, then an arriving alien could thus be held without a bond hearing for 5 years, 10 years, or even life. Surely, no one would argue that prolonged and indefinite detention of this sort is constitutionally appropriate.

---

here, there is a judicial stay of an Immigration Judge's removal order. *See* § 1231(a)(1)(B); *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008); *Guzman Chavez v. Hott*, 940 F.3d 867, 876 (4th Cir. 2019) (same); *Bah v. Barr*, 409 F. Supp. 3d 464, 468–69 (E.D. Va. 2019) (same). Petitioner contends that Petitioner is detained under § 1226(a), applicable to aliens "pending a [removal] decision." *Id.* However, this is also incorrect; *Jennings* specifically held that § 1226(a) does not supplant § 1225(b) once an arriving alien's removal proceedings commence. *See Jennings*, 138 S. Ct. at 845; *see also Djelassi*, 434 F. Supp. 2d at 928–29.

[6] *See Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (enemy combatants detained in Guantanamo Bay entitled to challenge the legality of detention); *Wong v. United States.*, 373 F.3d 952, 971 (9th Cir. 2004) ("The entry doctrine [does] not . . . deny all constitutional rights to non-admitted aliens."); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 449 n.32 (3d Cir. 2016) ("We doubt, for example, that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance."); *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987) ("The 'entry fiction' that excludable aliens are to be treated as if detained at the border despite their physical presence in the United States . . . does not limit the right of excludable aliens detained within United States territory to humane treatment.").

The parties' citations to *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), two foundational cases on alien detention, do not control the Fifth Amendment analysis here. This is so because neither *Zadvydas* nor *Jennings* squarely addressed whether the Fifth Amendment protects an arriving alien against prolonged and indefinite detention. In *Zadvydas*, the Supreme Court held that removable aliens typically may not be detained more than 6 months following a final order of removal from the United States, thereby giving rise to the now-familiar rule that removable aliens subject to a final order of removal typically have a right to a bond hearing or release if detention extends beyond 6 months. *See Zadvydas*, 533 U.S. at 701. Though supportive of the result reached here, the holding of *Zadvydas* is not dispositive here (1) because the aliens in *Zadvydas* were not arriving aliens stopped at the border like Petitioner, but aliens who had lived in the United States since childhood and (2) because the Supreme Court has recently made clear that *Zadvydas* is chiefly a statutory interpretation case concerning an INA provision not applicable here. *See id.* at 684–85; *see also Jennings*, 138 S. Ct. at 843–44 (discussing *Zadvydas*). Seventeen years after *Zadvydas*, the Supreme Court in *Jennings* addressed the status of arriving aliens, holding that arriving aliens do not have a statutory right to a bond hearing under the INA. *See Jennings*, 138 S. Ct. at 842. Thus, neither the holding of *Jennings* nor the holding of *Zadvydas* is controlling here as both cases involved statutory interpretation and did not address the precise constitutional question presented here: namely, whether an arriving alien detained for 24 months and who may be detained indefinitely has a constitutional right to a bond hearing under the Fifth Amendment's Due Process Clause.[7]

There can be no doubt here that the Fifth Amendment's Due Process Clause affords

---

[7] It is worth nothing that *Jennings* remanded this controlling constitutional question and others to the Ninth Circuit. *See Jennings*, 138 S. Ct. at 852. And interestingly, on remand, the Ninth Circuit expressed "grave doubts" that prolonged detention under the INA was constitutional. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Petitioner the right to a prompt bond hearing. Petitioner, a person, has now spent approximately 745 days in confinement without an opportunity to challenge the restrictions on his physical liberty. Petitioner's detention is now four times longer than the presumptively reasonable 6-month period set forth in *Zadvydas* and there is no persuasive argument that Petitioner's prolonged detention without a bond hearing comports with the Fifth Amendment or the ordinary operation of the INA. Indeed, at least nine other district courts have reached the same result: prolonged detention of an arriving alien without a bond hearing violates due process.[8] This is especially so, where, as here, there is no clear end in sight to Petitioner's detention, which is more appropriately described as indefinite detention. The mere scheduling of oral argument before the Fourth Circuit in Petitioner's asylum case does not guarantee that Petitioner's detention will soon end. The outcome of Petitioner's appeal is uncertain and thus Petitioner, who has no known criminal record in this country, may very well have his detention extended simply because he has pursued his right to appeal.[9] And this uncertain appellate process may not end with the Fourth Circuit. If Petitioner's asylum claim fails, then Petitioner may seek review in the Supreme Court, and if that fails as well, Respondents will have to navigate the difficult and time-consuming issue of whether it is possible to remove Petitioner to Cameroon, a country where Petitioner alleges that he was

---

[8] *See also Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (34-month detention of arriving alien without bond hearing violates due process); *Kydrali v. Wolf*, -- F. Supp. 3d --, No. 3:20-cv-539, 2020 WL 6498969, at *4 (S.D. Cal. Nov. 4, 2020) (27-month detention of arriving alien without bond hearing violates due process); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (23-month detention of arriving alien without bond hearing violates due process); *Mbalivoto v. Holt*, No.1:20-cv-827 at 5 (Dkt. 22) (E.D.Va. Aug. 11, 2020) (22-month detention of arriving alien without bond hearing violates due process); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention of arriving alien without bond hearing violates due process); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D. N.J. 2019) (same); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (18-month detention of arriving alien without bond hearing violates due process); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1177 (W.D. Wash. 2019) (17-month detention of arriving alien without bond hearing violates due process); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (10-month detention of arriving alien without bond hearing violates due process).

[9] *See Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (alien entitled to bond hearing under five-factor balancing test).

tortured. Thus, where, as here, detention is already extended for a prolonged period and the end to detention is indefinite, the Fifth Amendment applies, at least to provide Petitioner with a prompt bond hearing.[10]

Seeking to avoid this conclusion, Respondents cite a series of distinguishable Supreme Court cases on arriving aliens—cases which many courts have already distinguished as inapplicable to the question of whether an arriving alien has a Fifth Amendment Due Process right to a bond hearing. First, Respondents cite *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), a Cold War era case where the Supreme Court denied a bond hearing to an arriving alien detained at Ellis Island following his 19-month trip behind the "Iron Curtain." *Id.* at 214. This case is distinguishable, as the underlying rationale there for denial of a bond hearing was the potential disclosure of sensitive national security information, a factor not applicable here. *See id.* at 208; *see also Rosales-Garcia v. Holland*, 322 F.3d 386, 413 (6th Cir. 2003) ("*Mezei* does not govern the outcome of the instant cases . . . [as] the *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency . . . and a threat to national security."). Moreover, it is noteworthy that the Supreme Court's recent decisions affording Guantanamo Bay detainees the right to judicial review of detention[11] arguably abrogates the rationale of *Mezei*. Accordingly, Respondents' citation to *Mezei* does not alter the result reached here.

Second, Respondents cite several cases that draw a distinction between arriving aliens and inadmissible aliens already present in the United States. To be sure, aliens already present in the United States may have some greater rights than those available to arriving aliens. But no case

---

[10] The parties have identified conflicting authority on the standard of proof at a bond hearing. It is for the Immigration Judge, in the first instance, to determine the appropriate standard of proof at the bond hearing. *Compare Guzman Chavez*, 940 F.3d at 882; *with Velasco Lopez v. Decker*, 978 F.3d 842, 856 n.14 (2d Cir. 2020).

[11] *See Boumediene*, 553 U.S. at 771; *see also Rasul v. Bush*, 542 U.S. 466, 485 (2006).

persuasively holds that an arriving alien subject to prolonged and indefinite detention has no right to a bond hearing. Accordingly, the cited distinction does not alter the result reached here.[12]

Third, Respondents cite *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020), a case where the Supreme Court held that arriving aliens cannot seek judicial review of unfavorable credible fear determinations. *See Thuraissigiam*, 140 S. Ct. at 1983; *see also supra* n.2. Quite clearly, *Thuraissigiam* does not govern here, as the Supreme Court there addressed the singular issue of judicial review of credible fear determinations and did not decide the issue of an Immigration Judge's review of prolonged and indefinite detention. And interestingly, the very relief Petitioner seeks here—a bond hearing before an Immigration Judge—closely resembles the administrative review process *Thuraissigiam* necessarily deemed sufficient to obviate the need for due process. *See Thuraissigiam*, 140 S. Ct. at 1965–66. Accordingly, Respondents' citation to *Thuraissigiam* does not alter the result reached here.[13]

Fourth, Respondents cite *Landon v. Plasencia*, 459 U.S. 21 (1982), a case holding that an arriving alien has no constitutional rights regarding an application for admission, and addressing more specifically whether an arriving alien has certain procedural rights in exclusion proceedings, such as the right to more than eleven hours' advance notice of removal charges. *See id.* at 32, 36. Quite clearly, *Landon* concerns limits on an arriving aliens' rights in exclusion proceedings, not an arriving alien's right against prolonged and indefinite detention. Accordingly, Respondents' citation to *Landon* does not alter the result reached here.[14]

---

[12] Nor does the decision in *Hong v. United States*, 244 F. Supp. 2d 627 (E.D. Va. 2003) alter the result reached here. The petitioner in *Hong*, unlike Petitioner here, was detained only 10 months and had three prior drug convictions from his prior time in the United States, and thus was unlikely to have been released on bond. *See id.* at 629.

[13] Respondents' citation to *Ekiu v. United States*, 142 U.S. 651 (1892) is also distinguishable, as *Ekiu* similarly concerned the availability of judicial review and thus was not a case on prolonged and indefinite detention. *Id.* at 656.

[14] Respondents' citation to *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) is also distinguishable, as *Knauff* similarly concerned an arriving alien's rights with respect to removal hearings and thus was not a case on

9

Fifth, Respondents argue that other district courts, including another district judge in the Eastern District of Virginia, have concluded that arriving aliens have no constitutional right to a bond hearing. Conveniently, however, Respondents discount that a different district judge in the Eastern District of Virginia agrees with the result reached here: namely, that an arriving alien has a Fifth Amendment Due Process right to a bond hearing in the event of prolonged and indefinite detention. *See Mbalivoto*, slip op. at 18–19. In any event, the views of other district courts are unpersuasive for the reasons discussed *supra*, and also because "the majority of courts . . . [have] conclude[d] that an unreasonably prolonged detention under [] § 1225(b) without an individualized bond hearing violates due process." *Kydrali*, 2020 WL 6498969, at *4. Accordingly, Respondents' citation to other district court cases does not alter the result reached here.

Finally, Respondents argue that Petitioner is not entitled to a bond hearing because, under the INA, Petitioner may seek parole at the unreviewable discretion of the Attorney General and the Secretary of Homeland Security. *See* 8 U.S.C. § 1182(d)(5)(A). This argument is both unrealistic and unpersuasive. The statutory criteria for parole are highly restrictive and Petitioner has already sought and been denied parole. *See* Pet. ¶ 24; *see also Mbalivoto*, slip op. at 11–12 (concluding that the INA's parole process "has highly restrictive criteria and limited transparency" and that this process "is not constitutionality adequate"). In sum, there is no persuasive argument that Petitioner's prolonged and indefinite detention without a bond hearing comports with the Fifth Amendment. Accordingly, none of Respondents' counterarguments alters result reached here.

### IV.

For the reasons stated above, the Fifth Amendment's Due Process Clause affords Petitioner, an arriving alien already detained for 24 months, the right to a prompt bond hearing

---

prolonged and indefinite detention. *Id.* at 539–40.

before an Immigration Judge.[15] An appropriate Order will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 23, 2021

T. S. Ellis, III
United States District Judge

---

[15] Finally, Petitioner also seeks reimbursement of his costs and attorneys' fees for filing this action. Petitioner's request must be denied, as attorneys' fees are discretionary, and Respondents' position is "substantially justified" by existing authority. *Thomas v. Saul*, 816 F. App'x 835, 838 (4th Cir. 2020) (citing 28 U.S.C. § 2412(d)).

11